UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM D. PAUL, <br><br> Plaintiff, <br><br> v. <br><br> REDWOOD NATIONAL AND STATE PARKS DEPARTMENT, *et al*., <br><br> Defendants. | Case No. 17-cv-07197-SI <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND GRANTING PLAINTIFF LEAVE TO AMEND** <br><br> Re: Dkt. Nos. 84, 87 |

Now before the Court are motions to dismiss the Second Amended Complaint ("SAC") filed by two sets of defendants: (1) the federal defendants, consisting of the United States of America, Chief National Park Service ("NPS"), NPS Supervising Ranger Gregory Morse, and NPS Park Rangers Aaron Millhench and Elizabeth Hamilton, and (2) the state defendants, California State Park ("CSP") Rangers Mike Whelan and Kevin Cather. The motions are scheduled for a hearing on October 5, 2018. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, defendants' motions are GRANTED in part and DENIED in part, and the Court GRANTS plaintiff partial leave to amend. **If plaintiff chooses to file an amended complaint, he must do so within the scope of the leave granted in this order. Any amended complaint must be filed no later than October 22, 2018.**

**FACTUAL BACKGROUND**

On the afternoon of January 22, 2016, plaintiff William Paul was hiking in Jedediah Smith Redwood National and State Park ("RNSP") with his dog off-leash. Dkt. No. 80, SAC at ¶ 20. Plaintiff alleges that the SAC "is an account of what happened that fateful day based on the video from a body camera worn by NPS Ranger Elizabeth Hamilton, and Mr. Paul's recollection of the events that transpired." *Id.* Plaintiff alleges that his truck was parked at the trailhead. *Id.* at ¶ 21.[1] "The body camera that defendant Hamilton was wearing was turned on for approximately 15 minutes before Mr. Paul reached the trailhead, although Mr. Paul believes that they had been parked there for much longer as they had already called in the license plate." *Id.* Plaintiff alleges, "Defendant Hamilton is heard whispering to Defendant Millhench that she suspected the vehicle tag was stolen and that dispatch had lied to them about the truck being registered." *Id.* The SAC alleges that the body camera footage shows Millhench and Hamilton looking into the truck with a flashlight, Millhench observing that there was no Vehicle Identification Number ("VIN") on the dashboard of the vehicle, and Hamilton commenting that VIN infractions are misdemeanors. *Id.* at ¶¶ 22, 23.

Plaintiff alleges that as he reached the trailhead, Millhench and Hamilton had their weapons drawn and one of the officers yelled at plaintiff to get on the ground. *Id.* at ¶ 25. Millhench ordered plaintiff to place his dog in his vehicle. *Id.* Millhench explained that plaintiff's dog must be on a leash and that the officers had questions about the missing VIN. *Id.* Millhench asked plaintiff if he had any weapons and asked him to lift up his shirt to verify he did not. *Id.* at ¶¶ 27, 28. Millhench asked plaintiff if he would mind being frisked, and "Mr. Paul stated that he

---

[1] Plaintiff's opposition to defendants Whelan and Cather's motion to dismiss states that the vehicle was actually owned by a "Hector Perez." Dkt. No. 100 at 10. Plaintiff's opposition to the federal defendants' motion to dismiss attaches a number of exhibits, including two reports that appear to have been prepared by Millhench, and which list Hector Perez as the registered owner of the vehicle. Dkt. No. 91, Ex. A & D. As defendants note in their reply brief, the issue of ownership of the vehicle raises a question as to whether plaintiff has standing to challenge the search and seizure of the vehicle. The Court addresses this issue *infra*.

Although ordinarily the Court limits its review of the sufficiency of the complaint to the four corners of the complaint, the Court will consider plaintiff's exhibits to the extent the exhibits are relevant to assessing whether plaintiff can state a claim. Defendants have not objected to the exhibits, and in fact defendants' reply briefs have cited those same exhibits in support of certain contentions.

2

would like to keep the rights he still he had." *Id.* at ¶ 28. Millhench ordered plaintiff to put his keys on the hood of the truck and to turn around with his back towards the rangers. *Id.* at ¶¶ 28, 29. Plaintiff told Millhench he did not want to turn his back on the rangers, stating "You know 90% of people killed by cops are shot in the back?" *Id.* at ¶ 29. Plaintiff tossed his keys towards his truck and asked whether the rangers had probable cause. *Id.* Plaintiff alleges that Millhench was angry and that plaintiff feared he was going to die. *Id.*

Plaintiff alleges, "In that instant, Defendants Millhench and Hamilton took Mr. Paul to the ground. The next thing Mr. Paul recalls is lying face-down in the mud with Defendants Millhench and Hamilton driving their knees into his back, pulling his arms behind his back, and handcuffing him. Mr. Paul did not know whether he had been tased or hit with a blunt object. While he held Mr. Paul down, Defendant Millhench aggressively searched the person of Mr. Paul and radioed dispatch that he had 'one in custody.'" *Id.* at ¶ 30. At some point, plaintiff was handcuffed. Plaintiff alleges that Hamilton was training Millhench and that Hamilton, as his trainer, encouraged "his aggressive attitude and behavior by praising [Millhench's] actions." *Id.* at ¶ 55.

A few minutes later, CSP Rangers Mike Whelan and Kevin Cather arrived. *Id.* at ¶ 31. Cather assisted Millhench in getting plaintiff to his knees and Millhench searched plaintiff once more. *Id.* Millhench allegedly placed some of the contents from plaintiff's pockets into his own pocket, and Cather placed the rest of plaintiff's items on the ground. *Id.* Plaintiff alleges that he told defendants that he had a "mental disability and did not understand what was going on." *Id.* at ¶ 32. Plaintiff alleges he left his ID at home but provided his personal information to Cather. *Id.* at ¶ 33. Plaintiff alleges that he "stated several times that he did not want to answer their questions and did not give consent to search his vehicle." *Id.* Millhench continued to pressure plaintiff to answer questions and told plaintiff they would search his vehicle without his consent. *Id.* Plaintiff states that he told defendants that the vehicle information was in the glove box. *Id.*

Plaintiff alleges he did not resist arrest and remained handcuffed, standing in the rain. *Id.* at ¶¶ 33-34. Millhench consulted with Whelan, who told Millhench to tell plaintiff that he was being "lawfully detained." *Id.* at ¶ 34. Millhench then put plaintiff in the back of the patrol unit. *Id.* Plaintiff alleges that prior to searching plaintiff's vehicle, the rangers were informed that

3

plaintiff's license was "clear and valid." *Id.* at ¶ 35.

Defendants took plaintiff's dog and put her in the CSP Rangers' vehicle. *Id*. at ¶ 36. Thereafter, Millhench searched plaintiff's vehicle. *Id.* Plaintiff alleges that "Millhench did not check the VIN inside the driver's door nor did he pop the hood to check the VIN. For being so concerned about the identity of the vehicle, Millhench did not even retrieve the paperwork in the glove box." *Id.* Millhench found no drugs or weapons in the vehicle, but stated he suspected there was methamphetamine inside the vehicle. *Id.* at ¶ 39. Millhench stated he needed to inventory the vehicle prior to towing it. *Id.* at ¶ 37. Whelan then came over and asked Millhench if he had checked the VIN. *Id*. at ¶ 38. Millhench checked the VIN inside the driver's door, and "[o]nce Millhench checks the VIN he realizes that the VIN on the dash was not intentionally removed." *Id.*

The SAC alleges, "At this point we hear the truth: Defendant Millhench is no longer concerned about the identity of the vehicle and realizes that Mr. Paul is not a drug dealer. Millhench exclaims, 'Generally, when people freak out like that it's because they don't want me to find meth in their car.'" *Id.* at ¶ 39. Plaintiff alleges that after the vehicle search, the four rangers "spend several minutes discussing what they could charge Mr. Paul with, and by adding the trumped-up charges for fishing, removing a VIN, and resisting arrest, they felt like there was enough to justify taking him to jail, towing his vehicle, and impounding his dog. Defendant Whelan makes the final decisions." *Id*. at ¶ 42.

Plaintiff claims Millhench and Hamilton purposely left his money on the ground before transporting him to Del Norte County Jail. *Id.* at ¶¶ 44, 45. During the transit, Millhench and Hamilton allegedly turned on the air conditioning when plaintiff requested heat. *Id.* at ¶ 45. Plaintiff alleges that upon arrival at the jail, he mentioned to Millhench and Hamilton that his dog had salmon poisoning and needed medication. *Id*. at ¶ 46. Millhench then informed plaintiff that they had his truck towed and dropped off his dog at the pound, which upset plaintiff. *Id*. Two Del Norte County Sheriff's deputies took over custody of plaintiff and held him in Del Norte County Jail for over eight hours with no opportunity to make a phone call. *Id*. at ¶ 47.

Plaintiff's discharging paperwork cited him for having a dog off-leash, a fishing violation,

removing a VIN, and resisting arrest. *Id.* at ¶¶ 42, 48. Plaintiff alleges that these charges were baseless. *Id.* Plaintiff alleges he suffered from shock and hypothermia when released on January 23, 2016. *Id*. at ¶ 49. He further claims that he feared for the life of his dog and that he went to the pound on January 24, 2016. *Id*. at ¶¶ 49-51. A volunteer agreed to give the medicine to his dog. *Id*. Plaintiff alleges he is on a fixed income and had to borrow money to get his dog out of the dog pound. *Id.* at ¶ 52.

The SAC alleges that the defendants "fabricated the criminal charges in order to justify their unlawful actions," and that defendants brought the charges to the district attorney for prosecution. *Id.* at ¶ 91. However, the SAC also alleges that when plaintiff appeared in court on the day and time designated on his jail release form, "the judge informed him that he had no charges before him. There was no court file for William Paul." *Id.* at ¶ 53. Plaintiff claims that the incident caused him severe emotional distress and trauma. *Id.* at ¶ 87.

The SAC alleges the following claims: (1) Count One, Violation of the First, Fourth, Fifth and Fourteenth Amendments, against Millhench, Hamilton, Whelan and Cather, pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (2) Count Two, Malicious Prosecution, against the United States of America, Millhench, Hamilton, Whelan and Cather; and (3) Count Three, Violation of 42 U.S.C. § 2000dd, against Millhench and Hamilton.[2]

**PROCEDURAL BACKGROUND**

On December 19, 2017, plaintiff filed a *pro se* complaint against RNSP, Chief State Park Ranger Marshall Neeck, unidentified Park Rangers No. 1 through No. 6, Del Norte County Sheriff's Department, Sheriff Eric Apperson, and unidentified Sherriff's Deputies 1 and 2. The complaint alleged common law tort violations and civil rights violations under federal law. Dkt. No. 1. Following a motion to dismiss filed by Del Norte County Sherriff's office, plaintiff filed

---

[2] The SAC also alleges Count Four, which is alleged only against the County of Del Norte defendants. The County of Del Norte defendants filed an unopposed motion to dismiss the SAC, and they were dismissed in an order filed September 20, 2018. Dkt. No. 104.

5

his First Amended Complaint ("FAC") on March 12, 2018. Dkt. No. 13; Dkt. No. 18.

The FAC no longer named Neeck, Del Norte County Sheriff's Department, or Apperson. Dkt. No. 18. The FAC named the United States Department of the Interior ("DOI") and the County of Del Norte, and contained six causes of action. Dkt. No. 18. In March and April, plaintiff added defendants, many of whom he later dismissed, but including Gregory Morse, Aaron Millhench, Mike Whelan, Elizabeth Hamilton, Kevin Cather and United States Attorney General.

In response to a motion to dismiss brought by California Department of Parks and Recreation ("CDPR"), plaintiff requested leave to file the Second Amended Complaint ("SAC"). Dkt. No. 56, 72. The Court granted leave, but dismissed CDPR on the basis of Eleventh Amendment immunity. Dkt. No. 77. Plaintiff filed the SAC on July 3, 2018 and added the United States of America and County of Del Norte Sheriff's Deputy Justin Pearcey as defendants. Dkt. No. 75, 80. On July 10, 2018, the federal defendants filed a motion to dismiss certain claims from the SAC, and on July 17, the state defendants filed a motion to dismiss. Dkt. No. 84, 91. Plaintiff responded to all motions and defendants replied. Dkt. No. 91, 96, 100, 103.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding *pro se*, the Court has an obligation to "construe the pleadings liberally and to afford the [plaintiff] the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, *pro se* pleadings still must allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.     Federal Defendants**

The federal defendants move to dismiss Count One to the extent that count is brought under 42 U.S.C. § 1983 and the Fourteenth Amendment,[3] as well as Count Two (malicious

---

[3] The federal defendants do not move to dismiss Count One to the extent plaintiff has brought *Bivens* claims against Millhench and Hamilton alleging violations of his First, Fourth and Fifth Amendment due process rights.

7

1  prosecution), and Count Three (42 U.S.C. § 2000dd). Plaintiff concedes that the following federal defendants, who were named at some point in this case but not in the SAC, should be dismissed: the DOI, the Attorney General, NPS, and Neeck. Dkt. No. 91 at 7. The Court GRANTS the motion to dismiss these defendants without leave to amend. Plaintiff also concedes that the Court should dismiss Count Three under 42 U.S.C. § 2000dd, because that statute does not provide a private cause of action. *Id.* The Court GRANTS the motion to dismiss Count Three without leave to amend.

### A. Count One

#### 1. 42 U.S.C. § 1983 Claims against the Individual Federal Defendants

Although somewhat unclear from the SAC, plaintiff's opposition clarifies that he is seeking to hold the individual federal defendants liable under both 42 U.S.C. § 1983 and *Bivens*.[4] Plaintiff alleges that federal defendants Millhench and Hamilton acted under color of state law to deprive him of his First, Fourth, Fifth, and Fourteenth Amendment rights, violating 42 U.S.C. § 1983. Plaintiff's opposition also states that he seeks to hold Chief Ranger Morse liable under section 1983, although the SAC does not allege any specific claims against him. Defendants move to dismiss Count One to the extent that count is brought under section 1983 because the federal defendants are not state actors amenable to suit under that statute.

To establish a claim under § 1983, a plaintiff must demonstrate that: (1) the defendants deprived him "of a right secured by the Constitution and laws of the United States," and (2) that an individual "acting under color of state law" accomplished the deprivation. *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). The central inquiry is, therefore, whether the actions leading to the deprivation of the right are "fairly attributable to the State."

---

[4] "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). Although there are some differences, generally "a *Bivens* action is the federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983." *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006); *see also Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("Both *Bivens* and § 1983 allow a plaintiff to seek money damages from government officials who have violated his Fourth Amendment rights.").

8

*Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922, 937 (1982). To determine whether an action is fairly attributable to the state, courts apply a two-prong test, asking: (1) whether the deprivation was "caused by the exercise of some right or privilege created by the State or . . . by a person for whom the State is responsible[,]" and (2) whether "the party charged with the deprivation . . . may fairly be said to be a state actor." *Id*.

With regards to the second prong, "federal officials acting under federal authority are generally not considered to be state actors[.]" *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992) (citations omitted). "Federal officials do not become 'state actors' unless '[t]he State has so far insinuated itself into a position of interdependence with . . . [the federal officials] that it must be recognized as a joint participant in the challenged activity.'" *Id.* (quoting *Kletschka v. Driver*, 411 F.2d 436, 449 (2d Cir. 1969)). Rather, there must be a "sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself." *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008) (alterations in original) (citing *Cabrera*, 973 F.2d at 744) (holding that because California had no role in placing plaintiff on the no-fly list and despite "federal officials recruit[ing] local police to help enforce federal law," there was no sufficiently close nexus); *see also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974) (finding a regulated utility company was not a state actor for purposes of § 1983); *Scott v. Rosenberg*, 702 F.2d 1263, 1269 (9th Cir. 1983) (finding no sufficiently close nexus where "government employees requested information from, offered to exchange, and did exchange information with the California attorney general's office by means of which the two agencies assisted one another").

The Court concludes that the complaint fails to allege facts showing a "sufficiently close nexus" between the federal defendants and the State such that the actions of Millhench and Hamilton can be attributed to the State. Plaintiff alleges that Millhench and Hamilton were involved in the initial detention and search of plaintiff and the vehicle, and that after Cather and Whelan arrived at the scene, Cather "help[ed] Millhench get Mr. Paul to his knees," Millhench handed Cather some of plaintiff's possessions, Cather took plaintiff's information from him, and the four rangers discussed what plaintiff could be charged with and that Whelan made the final

9

decision. SAC at ¶¶ 31-33, 42. This is insufficient to transform the federal rangers' actions into those of the State.[5] *See Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995) (holding that Secret Service Agents did not act under color of state law where a county sheriff's office took the plaintiff into custody at the behest and under the direction of the federal agents).

Plaintiff's opposition argues that there is a symbiotic relationship between NPS and the California Department of Parks and Recreation ("CDPR"), such that NPS Rangers in RNSP are state actors. Plaintiff cites[6] a quote from Brian O'Neil, a DOI official, in which he discusses the joint management of the lands in the Redwood National and State Parks by NPS and CDPR, as well as an article describing the relationship between the National Park Service and the CDPR with regard to jointly managing the Redwood National and State Parks. Dkt. No. 91 at 9-10 & Ex. C. However, plaintiff has not cited any authority for the proposition that joint management is, on its own, a sufficient basis for holding federal park rangers working within the Redwood National and State Parks liable under section 1983. Second, plaintiff points to a Director's Order issued by NPS, which cites to a now repealed statute that granted authority to NPS for purposes outside of the National Park System. *Id*. Plaintiff alleges Millhench and Hamilton were outside of National Park boundaries, but his own exhibits contradict this claim.[7] *Id*. NPS officials located in RNSF act under authority of federal law through the Congressional grant of Redwood National Forest, 16 U.S.C. section 79(a) *et seq*.

Accordingly, the Court concludes that plaintiff may not bring section 1983 claims against the individual federal defendants. The Court DISMISSES Count One to the extent it is brought under section 1983. If plaintiff amends the complaint, he shall not include any section 1983

---

[5] Further, plaintiff is pursuing claims against Millhench and Hamilton under *Bivens*, and thus is not without a remedy against these defendants.

[6] Plaintiff states that the quote is from a speech Mr. O'Neill gave to a Congressional Committee. Plaintiff does not provide a specific citation for the quote.

[7] Incident Report, Exhibit A states the Officers were in "Redwood *National* and State Parks." Dkt. No. 91, Ex. A (emphasis added); Exhibit C explains how Congress "included three state parks *within* the [Redwood] [N]ational [P]ark boundary." Dkt. No. 91, Ex. C (emphasis added).

10

claims against the individual federal defendants.

### 2. Fourteenth Amendment Equal Protection

Count One alleges that defendants Millhench and Hamilton violated plaintiff's right to Equal Protection under the Fourteenth Amendment. SAC at ¶¶ 83-85. The Equal Protection Clause of the Fourteenth Amendment applies only to state actors. U.S. CONST. amend. XIV, § 1. As such, plaintiff cannot bring a Fourteenth Amendment equal protection claim against the federal defendants. However, "discrimination may be so unjustifiable as to be violative of due process" under the Fifth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 499 (1954); *see also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686, (2017) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638, n. 2 (1975)).

Accordingly, the Court DISMISSES Count One to the extent plaintiff alleges that the federal defendants violated his rights under the Fourteenth Amendment. If plaintiff amends the complaint, he may allege an Equal Protection violation under the Fifth Amendment's Due Process Clause,[8] provided that plaintiff can allege the elements of such a claim, including specific facts in support of allegations of discriminatory intent, as discussed in further detail in Section II.A.2.

### 3. *Bivens* claim against NPS Chief Ranger Morse

The SAC names defendant NPS Chief Ranger Gregory Morse as a party, but Morse is not named under any specific counts. The SAC states that Morse is being sued in his official capacity. SAC at ¶ 9. Defendants contend that to the extent plaintiff wishes to bring a *Bivens* claim against Morse, he cannot bring such a claim against Morse in his official capacity because "*Bivens* suits are individual capacity suits." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th. Cir. 2016).

Plaintiff's opposition concedes he cannot bring a *Bivens* claim against Morse in his official capacity, and states that plaintiff wishes to bring claims against Morse under section 1983. Dkt.

---

[8] The SAC alleges that Millhench and Hamilton violated plaintiff's Fifth Amendment Due Process rights, but does not assert an Equal Protection violation under that amendment. SAC at ¶¶ 80-82.

11

No. 91 at 1, 17. Plaintiff states that he wants to bring a claim against Morse for "inadequate training and maintaining a longstanding practice of violating the constitutional rights of American citizens." *Id.* at 17.

For the reasons stated *supra*, plaintiff cannot bring a section 1983 claim against Morse. If plaintiff chooses to amend his complaint to include a cause of action against Morse under *Bivens* in his *individual* capacity, he must allege that defendant Morse personally participated in the events giving rise to his claim. "Respondeat superior has been consistently rejected as a basis for the imposition of § 1983 or *Bivens* liability." *Meyer v. Reno*, 911 F. Supp. 11, 15 (D.D.C. 1996) (citing cases and holding that the claims against federal defendants based only on "their ultimate supervisory status, must be dismissed[]").

### B. Count Two: Malicious Prosecution

#### 1. United States

Plaintiff alleges a common law tort claim for malicious prosecution against the United States, Millhench and Hamilton. SAC at ¶¶ 88-92. The complaint alleges that Millhench and Hamilton were acting within the scope of their employment. *Id.* at ¶¶ 7-8. "The [Federal Tort Claims Act] provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). The FTCA "only waives sovereign immunity if a plaintiff first exhausts his administrative remedies." *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1258 (9th Cir. 2008) (citing 28 U.S.C. § 2675(a) and *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Plaintiff concedes that he failed to exhaust his administrative remedies under the FTCA. Dkt. No. 91 at 1. Accordingly, plaintiff's claim for malicious prosecution against the United States is DISMISSED WITHOUT LEAVE TO AMEND.

#### 2. Millhench and Hamilton

Plaintiff's opposition states that he seeks to bring a malicious prosecution claim against

Millhench and Hamilton pursuant to 42 U.S.C. § 1983. Dkt. No. 91 at 1, n.1. However, for the reasons stated above, plaintiff cannot bring a claim against these defendants pursuant to section 1983.

"To claim malicious prosecution, a petitioner must allege 'that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right.'" *Lacey v. Maricopa County*, 693 F.3d 896, 919 (9th Cir. 2012) (en banc);[9] *see also West v. City of Mesa*, 128 F. Supp. 3d 1233, 1239-40 (D. Ariz. 2015) (analyzing malicious prosecution claim against federal agents pursuant to *Bivens* where the plaintiff alleged he was prosecuted without probable cause in violation of the Fourth Amendment). A claim for malicious prosecution "requires 'the institution of criminal proceedings against another who is not guilty of the offense charged' and that 'the proceedings have terminated in favor of the accused.'" *Lacey*, 693 F.3d at 919 (quoting Restatement (Second) of Torts § 653 (1977)).

Defendants contend that plaintiff cannot state a claim for malicious prosecution under any theory because plaintiff was not actually prosecuted. The SAC alleges that when plaintiff appeared in court, the judge told him that there were "no charges before him" and "[t]here was no court file for Mr. Paul." SAC at ¶ 53. In addition, plaintiff concedes in his opposition that he was not actually prosecuted. Dkt. No. 91 at 13.

Plaintiff argues that "[c]ompelling Mr. Paul to go to Court is enough to have initiated criminal prosecution" and that "[t]he fact that the District Attorney failed to prosecute is a termination in favor of the plaintiff." *Id*. However, the fact that plaintiff appeared in court is not, on its own, sufficient to show that criminal proceedings were initiated. It appears to the Court that plaintiff's allegations in the SAC, combined with his statements in his opposition, strongly suggest that no criminal charges were actually initiated against plaintiff. If that is the case, plaintiff cannot state a claim for malicious prosecution, and instead his claim is for one of false arrest (which is

---

[9] *Lacey* involved a malicious prosecution claim brought under 42 U.S.C. § 1983. Because claims alleging constitutional violations pursuant to section 1983 are analogous to *Bivens* claims, the Court finds *Lacey* instructive.

13

already encompassed in Count One). *See Lacey*, 693 F.2d at 920 ("Although Lacey and Larkin were arrested, they have not alleged that any process resulting in the initiation of criminal proceedings followed this arrest. Accordingly, Lacey has not identified any action taken by Wilenchik that can properly be characterized as a prosecution. He has simply recast the false arrest claim as a claim for malicious prosecution, which he may not do.").

The Court will grant plaintiff limited leave to amend as follows: if plaintiff wishes to pursue a malicious prosecution claim against Millhench and Hamilton, he must bring that claim pursuant to *Bivens*, and he must be able to truthfully allege that he was prosecuted with malice and without probable cause, that criminal charges were actually filed against him, and that the criminal proceedings were terminated in his favor.

## II. State Defendants

State defendants CSP Rangers Whelan and Cather move to dismiss Counts One and Two. Plaintiff concedes that this Court should dismiss Count One to the extent he alleges First Amendment retaliation, Fourth Amendment excessive force, and Fifth Amendment deprivation of due process brought under 42 U.S.C. § 1983. Dkt. No. 100 at 1. The Court GRANTS defendants' motion to dismiss these claims without leave to amend. Plaintiff does oppose dismissal of the remainder of his Count One 42 U.S.C. § 1983 claims against Whelan and Cather: Unlawful Search and Seizure in violation of the Fourth Amendment and Violation of Equal Protection under the Fourteenth Amendment. Plaintiff also opposes dismissal of Count Two, the malicious prosecution claim.

### A. Count One
#### 1. Fourth Amendment Unlawful Search and Seizure

Plaintiff alleges that CPS Rangers Whelan and Cather violated his Fourth Amendment rights by conducting an unlawful search and seizure. Defendants argue that plaintiff's allegations against Whelan and Carter's regarding their involvement in the searches of the vehicle and of plaintiff, and regarding plaintiff's arrest, are vague and conclusory. For example, defendants

14

argue "[t]here are no factual allegations about the professional relationships between the National Park Service rangers (Hamilton and Millhench) and the California Department of Parks and Recreation rangers (Whelan and Cather). There are no allegations establishing that the state Ranger Whelan had the authority to 'make the final decisions' for, or otherwise direct, the federal rangers who ultimately arrested Plaintiff." Dkt. No. 103 at 2.

The Court finds that plaintiff's allegations are sufficient. With regard to the searches, plaintiff does allege that Cather and Whelan participated in the searches and that there was no probable cause for the searches. SAC at ¶¶ 31, 33-35, 38, 40, 42, 68, 71, 73. Whether the searches were in fact lawful is a question appropriate for summary judgment.[10] With regard to the arrest, plaintiff alleges that Millhench and Hamilton detained him, that Cather and Whelan discussed with Millhench and Hamilton the possible charges, and that Whelan made the final decision about the charges. Although plaintiff's allegations are not a model of clarity, plaintiff is *pro se*, and he does allege that the rangers lacked probable cause to arrest him. At this stage of the litigation, and particularly in light of his *pro* se status, plaintiff cannot be expected to have information about the professional relationships between the federal and state rangers, nor can he have specific information about the scope of Whelan's authority.

Defendants Cather and Whelan also move to dismiss Count One on the basis of qualified immunity. Citing *White v. Pauly*, __ U.S. __, 137 S. Ct. 548 (2017) (per curiam), defendants argue that they were entitled to rely on the presumptive legality of the conclusions and actions of Millhench and Hamilton, who were already on the scene when Cather and Whelan had arrived. In *White*, the Supreme Court held that a district court should have granted summary judgment in favor of a police officer on qualified immunity grounds because "[c]learly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action in circumstances like this from assuming that proper procedures, such as officer identification, have already been followed. No settled Fourth Amendment principle requires that officer to second-

---

[10] In addition, if plaintiff was not the owner of the vehicle, he may lack standing to challenge the search and seizure of the vehicle. Defendants may challenge plaintiff's standing to challenge that search and seizure on summary judgment.

15

guess the earlier steps already taken by his or her fellow officers in instances like the one White confronted here." *Id*. at 552. The specific circumstances in *White* involved suspects who were armed, and the late-arriving police officer heard shots fired prior to his arrival.

The Court concludes that it is premature to determine whether Whelan and Cather are entitled to qualified immunity, and that defendants may renew their argument on a fuller factual record. As *White* demonstrates, the qualified immunity analysis is fact-specific, and at this stage of the litigation the record regarding what happened with the searches and arrest of plaintiff is undeveloped.

### 2. Fourteenth Amendment Equal Protection

Although plaintiff's Equal Protection claim is somewhat unclear, it appears that the basis for his claim is contained in paragraph 54 of the SAC:

> Mr. Paul believes that he was targeted because his truck was old and beat-up and had different colored body parts. In addition, he believes that the Defendants had seen his vehicle on Howland Hill Road numerous times and knew he was a local as opposed to a tourist. (At the time, Mr. Paul lived on Howland Hill Road.) Being local would mean that their target was likely uneducated, and with a vehicle like that, he would surely not have the means to bring litigation. Mr. Paul further alleges that if he had been driving a shiny new SUV, dressed in Bermuda shorts and a clean white "Save the Redwoods" T-shirt, he would have walked away with only a warning for having his dog off-leash.

SAC at ¶ 54. Plaintiff also alleges, "In his report, Millhench valued Mr. Paul's vehicle at $100." *Id*. at n.1.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985). "To state a § 1983 claim for violation of the Equal Protection Clause[,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted).

To the extent plaintiff is alleging an Equal Protection claim on the basis of being a "local" as opposed to a tourist, that claim fails because the status of being "local" is not protected.

16

However, if plaintiff is seeking to allege that defendants discriminated against him based upon his socioeconomic group, which is one plausible reading of plaintiff's allegations, it is possible for plaintiff to allege an Equal Protection claim. *See Kadrmas v. Dickinson Public Schools*, 478 U.S. 450 (1988) (stating legislation based on socioeconomic status "will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose."); *see also Pac. Comm. Res. Ctr. v. City of Glendale*, Civil No. 6:13-cv-1272-MC, 2013 WL 5755390, at * 2-3 (D. Or. Oct. 23, 2013) (analyzing equal protection claim alleging discrimination on the basis of low socioeconomic status).

However, as currently alleged the SAC fails to state a claim for an Equal Protection violation. In order to state a claim, plaintiff must allege facts showing that defendants had the intent to discriminate against him on account of his socioeconomic status or some other protected status. The SAC speculates that Cather and Whelan targeted him because the truck he was driving was old and beat up, and that defendants had seen him driving in the area. However, plaintiff does not allege any particular facts, such as comments made by either Cather or Whelan, in support of that speculative allegation. *See Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (dismissing equal protection claim for failure to allege discriminatory animus).[11]

Accordingly, the Court DISMISSES this claim with leave to amend. If plaintiff chooses to amend this claim, he must allege specific facts supporting his allegation that defendants targeted him on account of socioeconomic status or some other protected status. *See id*.

### B.     Count Two: Malicious Prosecution

Defendants move to dismiss the malicious prosecution claim. In California, the elements of a malicious prosecution claim are that the prosecution: (1) was initiated by or at the direction of the defendant and was pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. *Conrad v. United States*, 447 F.3d 760, 767

---

[11] Plaintiff's opposition to defendants' motion suggests that defendants discriminated against him because the vehicle was registered to Hector Perez, "who was most likely Hispanic." Dkt. No. 100 at 10. However, this allegation of discriminatory intent is also speculative.

17

(9th Cir. 2006) (citing *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, 501 (Cal. 1989)).  For the reasons stated *supra*, the Court finds that plaintiff has failed to allege the elements of such a claim because plaintiff has not alleged that criminal charges were actually filed against him, nor has he alleged that any criminal proceedings were terminated in his favor.

Defendants also argue that the malicious prosecution claim should be dismissed because plaintiff has failed to allege compliance with the California Government Claims Act.  Dkt. No. 87 at 16.  Before filing suit on tort claims against state actors, a plaintiff must file a government claim pursuant to the California Government Claims Act.  CAL. GOV. CODE § 810, *et seq*.  A plaintiff must present her claim "not later than six months after the accrual of the cause of action."  CAL. GOV. CODE § 911.2.  The cause of action accrues on the date when the cause of action became actionable.  CAL. GOV. CODE § 901.  A cause of action accrues when it is "complete with all of its elements," including wrongdoing, harm and causation.  *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191 (2013); *Garber v. City of Clovis*, 698 F. Supp. 2d 1204, 1212 (E.D. Cal. 2010).

The SAC does not allege that plaintiff filed a government claim prior to filing this lawsuit, and plaintiff's opposition does not address this issue.  Accordingly, the Court DISMISSES the malicious prosecution claim.  If plaintiff wishes to pursue this claim against defendants Cather and Whelan, plaintiff must be able to allege that he complied with the Government Claims Act prior to filing suit, and he must be able to allege the elements of a malicious prosecution claim.

**CONCLUSION**

The following defendants are dismissed from this case: the Department of the Interior, the Attorney General of the United States, the National Park Service, and Chief Ranger Marshall Neeck.

The following claims are dismissed WITHOUT LEAVE TO AMEND from Count One:

- All claims brought pursuant to 42 U.S.C. § 1983 against the federal defendants.
- The Fourteenth Amendment claim brought against the federal defendants.
- The *Bivens* claim brought against defendant Morse in his official capacity.
- The 42 U.S.C. § 1983 claims against Whelan and Cather alleging First

18

Amendment retaliation, Fourth Amendment excessive force, and Fifth Amendment deprivation of due process.

The following claims are dismissed WITH LEAVE TO AMEND from Count One:

- Plaintiff may allege a *Bivens* claim against Millhench and Hamilton alleging a Fifth Amendment Equal Protection claim if he can allege specific facts showing that defendants discriminated against him on account of his socioeconomic status or some other protected status.
- Plaintiff may allege a *Bivens* claim against Morse in his individual capacity if he can allege that Morse personally participated in actions that deprived plaintiff of a constitutional right.
- Plaintiff may amend his section 1983 claim against Whelan and Cather alleging an Equal Protection violation if he can allege specific facts showing that defendants discriminated against him on account of his socioeconomic status or some other protected status.

The following claims remain in Count One:

- Plaintiff's *Bivens* claims against Millhench and Hamilton alleging violations of his First, Fourth and Fifth Amendment Due Process rights.
- Plaintiff's section 1983 claims against Whelan and Cather alleging a violation of the Fourth Amendment.

The following claims are DISMISSED WITHOUT LEAVE TO AMEND from Count Two:

- The claim for malicious prosecution against the United States.

The following claims are DISMISSED WITH LEAVE TO AMEND from Count Two:

- The claim for malicious prosecution against Millhench and Hamilton. Plaintiff may bring this claim pursuant to *Bivens* if he can allege the elements of this claim, including that criminal charges were actually filed against him and that the criminal proceedings were terminated in his favor.
- The claim for malicious prosecution against Whelan and Cather, provided plaintiff

can allege compliance with the Government Claims Act and the elements of the claim.

Count Three is DISMISSED WITHOUT LEAVE TO AMEND.

If plaintiff chooses to file an amended complaint, he must do so within the scope of the leave granted in this order. Any amended complaint must be filed **no later than October 22, 2018.**

**IT IS SO ORDERED**.

Dated: October 5, 2018

SUSAN ILLSTON
United States District Judge